STATE of Missouri, Respondent,

v.

Jeff F. WHITE, Appellant.

No. WD33040.

Missouri Court of Appeals,
Western District.

Nov. 30, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Feb. 1, 1983.

Application to Transfer Denied
March 29, 1983.

Philip Baker, Sp. Asst. Public Defender, Jefferson City, for appellant.

John Ashcroft, Atty. Gen., Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, P.J., and WASSER-STROM and LOWENSTEIN, JJ.

WASSERSTROM, Judge.

Defendant was found guilty by a jury on two counts of the sale of marijuana under Section 195.020, RSMo 1978. The court en-

tered judgment and sentence, from which defendant appeals. We affirm.

The jury could reasonably find from the evidence the following facts. On September 3, 1980, defendant and a companion Richard Hargrave were drinking in the Rathskeller of the Governor Hotel in Jefferson City, Missouri. They were approached by Glenn Beazley, a police undercover operative, who asked whether he could join them. When permission was given, Beazley sat down and a general conversation ensued. Defendant mentioned that he had been recently dismissed from the penitentiary, that he had been working in town at odd jobs, and that he wanted to get into an easier line of work, such as the drug traffic. He stated that he had some marijuana and asked if Beazley would like to purchase some. When Beazley responded in the affirmative, they went outside to a station wagon where defendant sold Beazley two ten dollar bags of marijuana.

Subsequently on September 20, 1980, Beazley met defendant again at the Governor Hotel, and defendant asked whether Beazley knew of any persons who would like to buy some marijuana. Beazley answered that he knew people to whom it could be distributed and that he could probably handle a pound. Defendant then took Beazley to a basement where marijuana was strung along five or six clothes lines, and they then partially filled two plastic bags which were delivered to Beazley. No money was exchanged at that time, but the two men met again on September 25, 1980, at which time Beazley paid defendant $125.00.

Defendant's defense was that of entrapment. He testified that both on the September 3 occasion and later on the September 20 occasion, it was Beazley who broached the subject of a marijuana transaction. Defendant testified that when Beazley joined the conversation at the Rathskeller on September 3, he mentioned that Jerry Sordelli was a source of marijuana, that Beazley and Sordelli had had an argument and that Sordelli would not sell Beazley any marijuana. According to defendant, Beazley asked and he agreed to go to Sordelli to obtain marijuana for Beazley.

With respect to the events of September 20, defendant testified that he went to the Holiday Inn, where he saw Beazley drinking with Charles Drennan. According to defendant, he was approached by Beazley and asked to again obtain marijuana from Sordelli. Defendant testified that he did call Sordelli on the phone, but Sordelli said he didn't trust Beazley and would not meet with him. However, defendant says that Sordelli gave him permission to go to Sordelli's basement where he could get marijuana. Defendant says that it was under those circumstances that he took Beazley to the basement premises from which marijuana was obtained and delivered to Beazley.

Hargrave testified on behalf of defendant that he was drinking with defendant at the Rathskeller when Beazley approached, told them about Sordelli being a source of marijuana and asked defendant if he would mind going and buying some marijuana from Sordelli for Beazley. Drennan also testified for defendant and stated that Beazley approached him at the Holiday Inn on September 20 and had a discussion before any appearance was made by defendant. Drennan says that at that time Beazley told him that he was going to ask defendant to get some "pot" for him. Drennan offered to sell marijuana to Beazley, but Beazley (according to Drennan) stated that he wanted to get the marijuana through defendant.

Defendant's Points Relied On may be condensed and summarized as follows: (1) the public defender failed to give defendant effective assistance of counsel; (2) the trial court improperly overruled certain pro se motions which defendant had filed prior to trial; (3) the prosecution failed to negate entrapment; and (4) the trial court undertook to resentence defendant to a longer term of imprisonment after the court had lost jurisdiction to do so.

I.

*Effective Assistance of Counsel*

The state notes two obstacles to the consideration of this point: (a) the point had

not been properly preserved by timely motion for new trial; and (b) this is a matter usually reserved for consideration under Rule 27.26.

With respect to the first of those two matters, the public defender did file a timely motion for new trial but the present point was not included. Thereafter, defendant's present counsel was appointed to handle the motion for new trial and any appeal. The newly appointed counsel then filed an amended motion for new trial which did include the present point, but the time for new trial had by then expired. Defendant agrees that the amended motion was ineffective, but he nevertheless argues that this point can and should be considered as plain error.

Defendant also agrees that a question as to effective assistance of counsel is generally a matter for consideration under Rule 27.26. Nevertheless he points out that a full hearing has already been held with respect to effective assistance of counsel in connection with the motion for new trial, at a time when the recollection of witnesses was better than would be true at any new hearing which might be held hereafter in a 27.26 proceeding. He therefore implores this court to follow the exception which permits the question of effective assistance of counsel to be considered on direct appeal where the facts have been adequately developed. We will acceed to this plea by defendant, primarily out of consideration for economy of judicial time and resources.

■ Defense counsel on this appeal with commendable zeal has made a vigorous attempt to show that the public defender was overworked and was consequently unable to and did not devote the necessary time and effort to the preparation and presentation of the defense in this case. Testimony with respect to this issue was given by defendant, the public defender and the public defender's investigator. All of this testimony, together with the skillful argument made by defense counsel on this appeal, have been carefully considered, but we remain unpersuaded that the defendant has carried the burden of proving that the public defender failed to provide effective assistance of counsel within the prescription of *Seales v. State*, 580 S.W.2d 733 (Mo.banc 1979). A detailed review of the evidence on this point would have no precedential value and would serve no other useful purpose.

Defendant's first point is denied.

## II.

### The Pro Se Motions

Notwithstanding the appointment of the public defender to represent him, defendant persisted in a steady stream of motions and other communications to the trial court. This included, among other items, a motion to dismiss, a request for disclosure, a motion for bill of particulars, and an amended motion to dismiss.

In December 1980 this case was pending before Judge Kinder. On December 19, 1980, defendant sent a letter to Judge Kinder which stated in part as follows:

"On December 2, 1980, I wrote Mr. McFadden, the Public Defender, requesting that he send me copies of all the Disclosures allowed by the Prosecuting Attorney, but that Office has disregarded that request. Since I intend to act as co-counsel, with the Courts' leave, this information is necessary for preparation of a defense....

Your Honor, I request that due to the above stated facts and the seriousness and consequences of any conviction that you inquire into this matter, making available all disclosures, allowing me leave to proceed as co-counsel; or in the alternative remove the Public Defender and issue your order for Court Appointed counsel."

On December 24, 1980, Judge Kinder responded as follows:

"If you wish to represent yourself you may, but you cannot have it both ways. Either you are represented by counsel or you are represented by yourself."

By letter dated January 5, 1981, defendant answered: "This is to advise you that I will represent myself."

The stream of communications continued, but a change in persona came about on March 30, 1981, when Judge McHenry assumed the bench and came in charge of this case. In a letter to Judge McHenry dated April 12, 1981, defendant requested that Judge McHenry "review the issues herein and issue the orders that you deem appropriate [sic]. . . ." Judge McHenry replied by letter dated April 21, 1981, as follows: "In reply to your letter of April 12, 1981, the Court records show that you are represented by Howard L. McFadden, Public Defender of the 19th Judicial Circuit. I would request that you communicate with the Court through him."

On the morning set for trial, the pro se motions mentioned remained undisposed of and were taken up by the court in chambers. After the file had been reviewed and had been rather thoroughly discussed, the court ruled as follows:

"THE COURT: All right. Mr. White, you were informed after all was said and done, after all the correspondence, after all the motions had been filed, after one or the other or both previous judges had told you if motions were going to be disposed of they would have to be called up and disposed of; still there was nothing ever done to call those motions up. As to my communication with you, I indicated to you on the 21st of April that you were still represented by Mr. McFadden, and that you were to communicate through him to the Court. You did that, sir, and you mentioned nothing except some reference to a motion to dismiss, but at the same time you requested witnesses for this trial today. There has never been any granting of leave for you to represent yourself, or for Mr. McFadden to withdraw.

I am going to overrule every motion that I have covered so far."

It would be difficult to sustain that ruling on the ground given, i.e., that the motions had not been called up for disposition.

Defendant had endeavored to call up his motions, but had been relegated to requesting action by his counsel. On the other hand, the public defender did not want to, or at least did not, call up the motions. This would seem to put defendant into a "catch 22" situation.

■ Fortunately there is a ready alternative solution. All of defendant's pro se motions wholly lacked substance. The failure of the court to rule those motions on the merits therefore resulted in no prejudice to defendant. This plainly appears with respect to the request for disclosure and the motion for bill of particulars. The prosecuting attorney at the request of the public defender had already made disclosure fully satisfactory to the latter. The prosecuting attorney had no duty to make duplicating disclosure to defendant personally for his purposes of acting as self-appointed "co-counsel."

■ Nor does the motion to dismiss stand in any better stead. The original motion sought dismissal of the Cole County proceedings on the theory that Cole County lost jurisdiction by surrendering defendant's custody to the Missouri State Penitentiary [1] to begin service of a sentence which had been pronounced by the Boone County Circuit Court. The motion complained incidentally that imprisonment in the penitentiary curtailed his ability to see counsel and that he was not afforded mailing privileges or phone calls of a confidential nature to reach potential witnesses. The amendment to the motion made no material addition, but did add a point as to "the State's neglect in not allowing disclosures in a timely motion by the defendant." None of this constituted any basis for demanding dismissal of the information.

Defendant's second point is denied.

## III.

### *Entrapment*

■ Defendant argues that his testimony and that of his witnesses injected the

---

1. The motion was mailed by defendant from Moberly, Missouri. From that we infer that defendant had by that time been transferred to the Moberly Training Center (a state correctional institution) in Randolph County. See Point IV of this opinion.

issue of entrapment, and under *State v. Weinzerl*, 495 S.W.2d 137 (Mo.App.1973) the burden shifted to the state to offer rebuttal evidence, which it failed to do. A completely sufficient answer to this argument is that defendant's version of the facts do not amount to entrapment. At best, defendant's evidence tends only to show that Beazley took the initiative in trying to purchase the marijuana. Such a showing is not enough in itself to "inject" the issue. The rule in this respect is stated in *Weinzerl* as follows: "[A] showing of solicitation alone, as appears in this case, will not raise an issue of entrapment ... Solicitation will raise an issue of entrapment when it is coupled with a showing of reluctance or unreadiness on the part of the defendant to accept the solicitation ... Nor does the use of a governmental agent in the pose of a willing buyer or the use of an informer to provide a willing buyer of narcotics, without any overreaching, raise an issue of entrapment."

A true entrapment case is illustrated by *State v. Devine*, 554 S.W.2d 442 (Mo.App. 1977), a case cited and relied upon by defendant. The facts in *Devine* stand in sharp contrast to those of the instant case. In *Devine*, a police informer repeatedly and insistently solicited defendant and gradually overcame his resistance by constantly raising the monetary offer for a controlled substance and by saying that the substance was for a friend who had been burned and who needed the pills to ease pain. No such appeal to sympathy, overwhelming of initial resistance, or overreaching occurred in this case. Under the facts here, there was no legitimate defense of entrapment and it was error to submit that defense to the jury. However, defendant cannot take advantage of that error, because it was error in his favor.

Moreover, even if defendant's evidence were to be considered sufficient to inject the defense, the testimony offered in his behalf was directly contradicted by that of Beazley. That would have been enough to make a jury issue. Defendant argues: "Procedurally, the State should have brought forth evidence in rebuttal showing the predisposition of Appellant to commit the crime in question, but failed to do so." But if the contradictory testimony appears in the direct evidence of the state's witness, it would be the height of redundancy to require the state to recall the same witness in order to repeat the identical testimony as procedural "rebuttal."

Defendant's third point is overruled.

## IV.

### *Jurisdiction to Correct Sentence*

Defendant came before the court for allocution on August 17, 1981, and the court announced orally the imposition of five year imprisonment on Count I and ten year imprisonment on Count II. At that time, defendant was already serving time at the Moberly Training Center under a prior sentence. The oral announcement of sentencing in the present case made no mention of whether the new sentences were to be served concurrently or consecutively, either with each other or with respect to the prior sentence.

Approximately thirty minutes after the oral sentencing, the judge realized that by operation of Section 558.026.1, RSMo 1978, the five and ten year sentences would be concurrent and also both sentences would be concurrent with the prior sentence, unless he made some provision to the contrary. The judge actually intended for the five and ten year sentences to be concurrent with each other, but that those sentences should be consecutive to the prior sentence.

Realizing his mistake, the judge tried to call defendant back into the courtroom, but he had already commenced the trip back under custody to the Moberly Training Center. The judge ordered defendant to be brought back the next day, August 18, 1981, at which time the court made the following record: "Let the record show that no docket sheet entry on the judgment and sentence pronounced yesterday was made, nor was any order of judgment and sentence, or commitment either prepared or sent to the Division of Corrections."

Defense counsel then objected to any correction of the sentence on the ground that

the court had lost jurisdiction, but the court nevertheless proceeded to rule as follows: "The Court corrects its inadvertence yesterday by ordering the five years and 10 years to run concurrently with each other but consecutively to any sentence the defendant is now serving."

 On this appeal, defendant argues that said correction was without authority because the court had exhausted all jurisdiction when it announced sentence and let the defendant leave the courtroom; and he further objects that such a correction would constitute a violation of double jeopardy. The court did not exhaust its jurisdiction until judgment and sentence had been "entered," and that did not occur until the making of a written record. *State v. Vinson,* 87 S.W.2d 637 (Mo.1935); *City of Riverside v. Johnson,* 507 S.W.2d 48 (Mo.App. 1974); *State v. Lance,* 561 S.W.2d 445 (Mo. App.1978). Nor did the correction violate the protection of double jeopardy. *See United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *United States v. Busic,* 639 F.2d 940 (3d Cir.1981).

Defendant's fourth point is overruled.

There being no error, the judgment is affirmed.

All concur.