**STATE of Missouri, Respondent,**

v.

**Terry PARKER, Appellant.**

**Terry PARKER, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 66808.

Missouri Court of Appeals, Eastern District, Division One.

March 18, 1997.

Deborah B. Wafer, Dist. Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Fernando Bermudez, Assistant Attorney General, Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Terry Parker ("defendant"), appeals the judgment of conviction for robbery in the first degree, RSMo § 569.020 [1], and armed criminal action, RSMo § 571.015, entered by the Circuit Court of St. Charles County after a jury trial.[2] We affirm.

On July 28, 1992, defendant held up a pharmacy, forcibly stealing drugs at gunpoint. Defendant was charged with one count of robbery in the first degree and one count of armed criminal action. The matter was tried on June 20 through 22, 1994. The jury returned guilty verdicts on both counts. On August 18, 1994, the trial court denied defendant's motion for new trial and sentenced defendant as a prior, persistent and class X offender to consecutive terms of life and fifty years. This appeal followed.

For the first of his two points on appeal, defendant contends the trial court's written sentence sentencing him as a class X offender pursuant to RSMo § 558.019 (Cum.Supp. 1992) was unauthorized, on the ground there was a material discrepancy between the written sentence and the court's oral pronouncement of sentence, which made no mention of

---

1. All statutory references are to RSMo 1986 unless otherwise indicated.

2. As defendant's brief raises no issues regarding the denial of his Rule 29.15 motion, his appeal of that judgment is deemed abandoned. *State v. Nelson,* 818 S.W.2d 285, 287 (Mo.App.E.D.1991).

defendant's status as a class X offender.[3] Citing our decisions in *McCaine v. State*, 891 S.W.2d 419 (Mo.App.E.D.1994) and *Jones v. State*, 910 S.W.2d 300 (Mo.App.E.D.1995) (which follows *McCaine*), defendant claims the oral sentence is controlling, and the written sentence must be corrected to conform to it. However, because the Missouri Supreme Court's recent decision in *Howard Johnson v. State of Missouri*, 938 S.W.2d 264 (Mo. banc 1997), controls the disposition of this case, we deny defendant's request for relief.

In *Johnson*, the trial court entered a written judgment and sentence reflecting the terms of the defendant's plea of guilty, including a finding that the defendant was a persistent offender. 938 S.W.2d at 266. However, the court did not specifically refer to this finding during its oral pronouncement of sentence. *Id.* at 264. In his post-conviction motion and on appeal, the defendant argued the written sentence specifying he was a persistent offender was inconsistent with the oral pronouncement of sentence, and the oral sentence was controlling. *Id.* The Missouri Supreme Court found no merit in this argument: "Assuming, without deciding, that the oral sentence always controls over the written sentence when they are irreconcilable, such a rule can have no application where either: (1) the record shows that the oral sentence was not materially different from the written one, or (2) the judge has no discretion to pronounce a sentence different from the written sentence. Both of these are true in this case." *Id.* at 265 (footnote omitted).

The Court first found the oral pronouncement of sentence was not materially different from the written sentence. According to the Court, "... [W]here the formal oral pronouncement of sentence is ambiguous or, as here, silent on a particular issue, nothing prevents an appellate court from examining the entire record to determine if the oral sentence can be unambiguously ascertained." *Id.* at 265 (footnote omitted). The Court

thereby rejected the holding in *McCaine*, 891 S.W.2d at 420, that a reviewing court could not look outside the formal pronouncement of sentence to determine the sentence orally imposed. *Johnson*, 938 S.W.2d at 265. "Where, as here, the formal pronouncement of sentence does not mention an issue, the full record should be examined." *Id.* (footnote omitted.)

■ Examination of the full record here leaves no doubt the trial court intended to sentence defendant as a class X offender. In its amended information, the state alleged defendant was a class X offender "under Section 558.019, RSMo, in that he has pleaded guilty to or has been found guilty of three felonies committed at different times." Before the jury was called in on the first day of trial, June 20, 1994, the state offered evidence of these previous felony convictions. The trial court then found defendant was a prior, persistent and class X offender, holding "that the defendant, if he is found guilty on these charges, would be subject to the prior, persistent and Class X offender statutes of Missouri." At the August 18, 1994, sentencing hearing, defense counsel stated, "... [T]he Court is well aware that I think [defendant] has been charged up as a Class X offender. He will do eighty percent of any sentence that the Court imposes here." Finally, the court's written judgment, entered the day of the sentencing hearing, stated:

> ... *The Court having found the defendant to be a prior, persistent offender and Class X offender on June 20, 1994*, allocution granted; it is ordered and sentenced that defendant be confined for a period of his natural life for the offense of Robbery in the First Degree, Count I and for a period of fifty (50) years for the offense of Armed Criminal Action, Count II, said sentences to run consecutively and to be endured in such place of confinement as may be designated by the State Depart-

---

3. The trial court pronounced sentence at the sentencing hearing as follows:

... [I]t is the order and sentence of this Court that the defendant be confined for a period of his life for the offense of robbery in the first degree, and for a period of fifty years

for the offense of armed criminal action, said sentence [sic] to run consecutively and to be endured in such place of confinement as may be designated by the State Department of Corrections, to who [sic] the defendant is ordered committed.

ment of Corrections to whom the defendant is ordered committed.

(Emphasis ours).

The Court further held in *Johnson,* "Even if the record did not clearly reveal the oral sentence, ... the trial judge had no discretion to determine whether [the defendant] should serve his sentence as a persistent offender. The statutory language is clear and it is mandatory." 938 S.W.2d at 266. The relevant statutes provide that if the trial court finds the defendant has been found guilty of two prior felonies, it must find the defendant to be a persistent offender; and, once the defendant is found to be a persistent offender, the enhancement sentence provision automatically applies and the defendant must serve a minimum term of sixty percent of the sentence. *Id.* at 266; RSMo §§ 558.021.1, 558.019.4(2), and 558.019.2(2). The Court held:

> As described above, the court explicitly made the required factual findings and the finding that [the defendant] was a persistent offender. Short of revoking these findings, the court could not have sentenced him as anything other than a persistent offender. Since the statute gave the sentencing court no discretion to decide what proportion of his sentence [the defendant] was required to serve, the fact that the court did not mention it during the formal pronouncement of sentence is irrelevant. Under this statute, the finding that a defendant is a repeat offender need not be restated during the oral pronouncement of sentence. To the extent that it holds otherwise, *McCaine* is overruled.

938 S.W.2d at 266.

Likewise here, once defendant was found to be a class X offender, the repeat offender statute left the trial court no discretion to determine what proportion of the sentence defendant would serve: "If the defendant is a class X offender, the minimum prison term which the defendant must serve shall be eighty percent of his sentence." RSMo § 558.019.2(3) (Cum.Supp.1992). The court was not required to restate that defendant was a class X offender during the oral pronouncement of sentence. In sum, because the written sentence imposed by the trial court was required by law and was not materially different from the oral sentence, defendant was properly sentenced as a class X offender. Point denied.

For his second point on appeal, defendant contends the trial court plainly erred in permitting the prosecutor to make the following underscored comments during the state's closing argument:

> ... This robbery was dangerous. Not just because he used a gun. Not just because it was in the middle of the day, when any innocent person could have walked into the store. Not just because it was a residential neighborhood, but also look at what this guy took. *These kinds of drugs can be—if they get into the wrong hands, every bit as dangerous as a gun.* We are talking about Cocaine. Not stuff that's been cut and sold on the street. We are talking pure, one hundred percent Cocaine. Look at Opium, Morphine, Dilaudid and these were not stolen in insignificant quantities. Literally, this guy cleaned out the whole pharmacy, every schedule two controlled substance that pharmacist had.... And what you might find interesting and perhaps the sadest [sic] thing about this crime, besides the fact that it happened, is look at how little of it we got back. Look at how little of it was ever recovered. *Where did the rest of it go? Where did he put it? What did he do with it? Who was hurt because of that?* You will notice the portion that the police found at the residence was just the split that Hambelton [defendant's accomplice] got and in fact, you will notice with many of them, its a fifty fifty split,.... What the police got was only Mr. Hambelton's cut. They did not get this defendant's cut.
>
> Ladies and gentlemen, those fine people in that store should not have had to go through this. No one should ever have to go through this and *our community should not suffer having this kind of poisen [sic] put on our street because of some greedy crook....*

(Emphasis ours.) Defendant claims the prosecutor invited the jury to convict defendant on the basis of matters not in evidence and on uncharged crimes—specifically, the

sale of drugs. Defendant further argues the prosecutor "improperly urged conviction based not on facts or inferences but on fear and anger." We disagree.

Defendant concedes he did not object to any of the above at trial, nor did he raise the prosecutor's closing as an issue in his motion for new trial. Therefore, our review is for plain error. *State v. Childers*, 801 S.W.2d 442, 444 (Mo.App.E.D.1990).

Plain error affecting substantial rights may be considered only if there is a strong, clear showing that manifest injustice or miscarriage of justice will result if relief is not granted. *Id.* Relief is rarely granted when plain error is asserted with respect to matters contained in closing argument: trial strategy looms as an important consideration, *State v. Cobb*, 875 S.W.2d 533, 537 (Mo. banc 1994), and requiring the trial court to interrupt counsel's argument increases the probability of error. *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992); *State v. Clemmons*, 753 S.W.2d 901, 907–908 (Mo. banc 1988).

Here, the first emphasized statement of the prosecutor's closing argument was merely a statement that drugs are dangerous "if they get into the wrong hands[.]" The second emphasized statement was a series of rhetorical questions concerning a gap in the evidence, i.e. the failure to recover all the drugs that were stolen. We see no error in either. "The prosecutor has the right to argue reasonable inferences from the evidence and to argue any inference from the evidence he deems in good faith to be justified." *State v. Pena*, 784 S.W.2d 883, 887 (Mo.App.W.D.1990). Comments in closing argument will warrant reversal only if they had a decisive impact on the jury's determination. *Id.* Here, the evidence of defendant's guilt was overwhelming. Even if the above remarks were objectionable—and we do not believe they were, but rather were inferences reasonably drawn from the evidence—their effect, if any, did not rise to the level of manifest injustice required to reverse a conviction for plain error. As for the third emphasized statement in the prosecutor's closing argument, this Court has found similar comments did not constitute reversible error. *See State v. Jeffries*, 858 S.W.2d 821, 824–825 (Mo.App.E.D.1993); *State v. Smith*, 849 S.W.2d 677, 680–681 (Mo.App.E.D.1993). The trial court did not plainly err by failing to intervene on its own motion during the state's closing argument. Point denied.

The judgment of the trial court is affirmed.

DOWD, P.J., and REINHARD, J., concur.